**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEW JERSEY PROTECTION & ADVOCACY, INC., et al., | : : : | CIVIL ACTION NO. 07-2978 (MLC) |
| Plaintiffs, | : : | **MEMORANDUM OPINION** |
|  | : | **FILED June 30, 2008** |
| v. | : : |  |
| NEW JERSEY DEPARTMENT OF EDUCATION, et al., | : : : |  |
| Defendants. | : : |  |

**COOPER, District Judge**

**APPEARANCES**

Lowenstein Sandler PC (David L. Harris and Stephen M. Plotnick of counsel), Roseland, New Jersey; Education Law Center (Ruth Lowenkron of counsel), Newark, New Jersey; and Loughlin & Latimer (Michaelene Loughlin of counsel), Hackensack, New Jersey, for the Plaintiffs

Attorney General of New Jersey (Michael C. Walters of counsel), Trenton, New Jersey, for the Defendants

**INTRODUCTION**

Plaintiffs, New Jersey Protection and Advocacy, Inc.
("NJP&A"), the Education Law Center ("ELC"), the Statewide Parent

Advocacy Network of New Jersey ("SPAN"), and the Arc of New

Jersey (the "Arc" and together with NJP&A, ELC, and SPAN,

"Plaintiffs") commenced this action against (1) the New Jersey

Department of Education ("NJDOE"), (2) the New Jersey State Board

of Education ("Board"), (3) Lucille E. Davy ("Davy") in her

official capacity as Commissioner of the NJDOE, and (4) Arnold G.

Hyndman, Arcelio Aponte, Ronald K. Butcher, Debra Eckert-Casha, Maud Dahme, Kathleen A. Dietz, Josephine E. Hernandez, Frederick H. Lagarde, Jr., Ernest Lepore, Thelma Napoleon-Smith, Edithe Fulton, and Kenneth J. Parker in their official capacities as members of the Board (the "Board Members" and together with the NJDOE, the Board, and Davy, "Defendants").  (Dkt. entry no. 1, Compl.)  Plaintiffs assert that Defendants have violated the rights of disabled children and their parents under the Individuals with Disabilities Education Act, 20 U.S.C. § ("Section") 1400, et seq. ("IDEA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  (Id.)[1]

Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), or, in the alternative, to join necessary parties pursuant to Rule 19(a).  (Dkt. entry no. 9.)  Plaintiffs oppose the motion.  (Dkt. entry no. 11.)  For the reasons stated herein, the Court will (1) grant the motion insofar as it seeks to dismiss Plaintiffs' claims against the Board Members, (2) deny the motion insofar as it seeks to dismiss Plaintiffs' claims against the NJDOE, the Board, and Davy, and (3) deny the motion insofar as it seeks to join necessary parties.

---

[1] Plaintiffs initially alleged that Defendants also violated the New Jersey Law Against Discrimination ("NJLAD") (count 3). (Id. at §§ 122-124.)  However, Plaintiffs voluntarily withdrew this claim, stating that they believe they can obtain the relief they seek through their IDEA and Rehabilitation Act claims. (Pls. Br., at 8 n.3.)

2

## BACKGROUND

Plaintiffs are statewide advocacy organizations and "agencies acting pursuant to federal protection and advocacy statutes on behalf of children with disabilities and their parents." (Compl., at ¶ 9.)  Plaintiffs seek to enjoin Defendants from violating the rights of disabled children to receive a "free appropriate public education" ("FAPE") in the "least restrictive environment".  (Id.)  Plaintiffs assert that "[a]s a result of Defendants' failures, countless children with disabilities have been denied an appropriate education. . . . [and] are unnecessarily segregated and denied their right to be educated with children who do not have disabilities, to the maximum extent appropriate." (Id. at ¶ 10.)  Thus, Plaintiffs request that this Court compel Defendants to include disabled children in general education classrooms with aids, services, and accommodations, to the maximum extent appropriate. (Id. at ¶ 11.)

Plaintiffs, by way of example, describe several disabled children who they allege were denied a FAPE in the least restrictive environment by Defendants.  (Id. at ¶¶ 15-19.)  The Court will not recite those descriptions herein but we incorporate them by reference and, for purposes of addressing this motion only, accept that they are true and accurate.  See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134

3

(3d Cir. 2004).  Plaintiffs also list statistics, <u>inter</u> <u>alia</u>, comparing the percentage of segregated disabled children in New Jersey with the percentage in other states and the country as a whole, and describing the percentage of segregated disabled minority students in the state.  (Compl., at ¶¶ 20-29.)  Again, the Court will accept these statistical allegations as true for purposes of addressing this motion.

**DISCUSSION**

**I.   Legal Standards Governing a Motion to Dismiss**

**A.   Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) at any time. Fed.R.Civ.P. 12(b)(1); <u>Iwanowa v. Ford Motor Co.</u>, 67 F.Supp.2d 424, 437-38 (D.N.J. 1999).  The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction.  <u>Id.</u> at 438.  Under this standard, the Court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction.  <u>Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.</u>, 721 F.2d 68, 75 (3d Cir. 1983); <u>Iwanowa</u>, 67 F.Supp.2d at 438.

A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint.  Iwanowa, 67 F.Supp.2d at 438.  Under this standard, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdiction claims."  Pashun v. Modero, No. 92-3620, 1993 U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993).  The Court may consider affidavits, depositions, and testimony to resolve factual issues and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Iwanowa, 67 F.Supp.2d at 438.  The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed.  Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (explaining that a defendant may factually attack subject matter jurisdiction before filing an answer); see Pashun, 1993 U.S. Dist. LEXIS 7147, at *6.

The "issue of standing is jurisdictional".  St. Thomas-St. John Hotel & Tourism Ass'n v. V.I., 218 F.3d 232, 240 (3d Cir. 2000).  A plaintiff seeking to invoke federal jurisdiction bears the burden of demonstrating standing, and a federal court must dismiss the underlying claim without reaching the merits if the plaintiff cannot meet the requirements of standing.  Lujan v.

Defenders of Wildlife, 504 U.S. 555, 561 (1992); Mariana v.
Fisher, 338 F.3d 189, 204-05 (3d Cir. 2003).

**B.    Rule 12(b)(6)**

The Court may dismiss a complaint for "failure to state a
claim upon which relief can be granted".  Fed.R.Civ.P. 12(b)(6).
On a motion to dismiss, the Court generally must accept as true
all of the factual allegations in the complaint, and must draw
all reasonable inferences in favor of the plaintiff.  Chubb
Corp., 394 F.3d at 134; Doe v. Delie, 257 F.3d 309, 313 (3d Cir.
2001).  However, the Court need not credit bald assertions or
legal conclusions alleged in the complaint.  In re Burlington
Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997);
Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.
1997).  The plaintiff's "[f]actual allegations must be enough to
raise a right to relief above the speculative level, on the
assumption that all the allegations in the complaint are true
(even if doubtful in fact)".  Bell Atl. Corp. v. Twombly, 127
S.Ct. 1955, 1965 (2007).

The Court, when considering a motion to dismiss, may
generally not "consider matters extraneous to the pleadings."  In
re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.
However, if the Court exercises discretion and permits a party to
present matters outside the pleadings, the Court must (1) convert
the motion to dismiss into one for summary judgment, and (2)

6

allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56.  See Fed.R.Civ.P. 12(b).  An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

## II. Motion to Dismiss Standards Applied Here

### A. Standing

Defendants assert that Plaintiffs' IDEA claim must be dismissed because they lack independent and representational standing.  (Defs. Br., at 23.)  With respect to independent standing, Defendants contend that it is unclear what legally protected interest Plaintiffs allege that Defendants have invaded.  (Id. at 23-25.)  Defendants also contend that Plaintiffs do not have prudential standing because, among other reasons, their claims are inconsistent with the purposes implicit in the IDEA and do not fall within the "zone of interest" established by the IDEA.  (Id. at 25-26.)  Moreover, Defendants assert that "Plaintiffs lack representational standing because their claims require a fact-intensive, individualized inquiry into the placement decisions of the [s]tudents, thus necessitating the participation of the [s]tudents."  (Id. at 27.)

Plaintiffs note that Defendants' arguments regarding independent standing are irrelevant because they do not seek to redress any harm that they have personally suffered.  (Pls Br., at 17.)  Plaintiffs argue that protection and advocacy groups such as plaintiff NJP&A have representational standing to bring an action on behalf of persons with disabilities.  (Id. at 18.)  Plaintiffs further argue that their claims do not require individual participation by their members and constituents because the complaint:

> alleges systematic failures by Defendants to comply with the inclusion mandate of IDEA as a result of policies and practices of general applicability which have had the effect of denying countless children with disabilities their right to the inclusive education to which they are entitled, and seeks relief in the form of a complete overhaul of Defendants' system.  Thus, there is no need or reason for the participation of any individual students.

(Id. at 21-22.)  Finally, Plaintiffs contend that the complaint contains sufficient allegations establishing NJP&A and ELC's standing, and Defendants "do not take any issue with respect to the standing of SPAN and the Arc."  (Id. at 22-25.)

Federal judicial power extends only to actual cases or controversies.  U.S. Const. art. III, § 2; Flast v. Cohen, 392 U.S. 83, 95 (1968).  Plaintiffs must possess "standing" to challenge the action sought to be adjudicated.  Hein v. Freedom From Religion Found., 127 S.Ct. 2553, 2562 (2007); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976).  This principle

of standing encompasses both constitutional and prudential
components.  Warth v. Seidin, 422 U.S. 490, 498 (1975).  Standing
under Article III of the Constitution requires a plaintiff, at an
"irreducible constitutional minimum", to establish an actual or
imminent personal injury that is (1) fairly traceable to the
challenged conduct, and (2) likely to be redressed by a favorable
judicial decision.  Lujan, 504 U.S. at 560-61; Pa. Psych. Soc'y
v. Green Spring Health Serv., Inc., 280 F.3d 278, 283 (3d Cir.
2002) (stating that a plaintiff must demonstrate "that it has
suffered a cognizable injury that is causally related to the
alleged conduct of the defendant and is redressable by judicial
action" to establish standing).  "Since these are not mere
pleading requirements but rather an indispensable part of the
plaintiff's case, each of these elements must be supported in the
same way as any other matter on which the plaintiff bears the
burden of proof, i.e., with the manner and degree of evidence
required at the successive stages of the litigation."  Pa. Prison
Soc'y v. Cortes, 508 F.3d 156, 161 (3d Cir. 2007).  Thus,
standing enables federal courts to identify those disputes that
are appropriately resolved through the judicial process.  Id. at
162.

     An organization or association may have standing when it (1)
has standing "in its own right to seek judicial relief from
injury to itself and to vindicate whatever rights and immunities

9

the [organization or] association itself may enjoy", or (2) asserts claims on behalf of its constituents or members, and such constituents or members themselves would have standing to bring the claims.  Pa. Prison Soc'y, 508 F.3d at 162-63 (emphasis and alteration in original) (citations omitted); see Pa. Psych. Soc'y, 280 F.3d at 283 (noting that an association may satisfy the elements of standing by either asserting claims arising from injuries sustained by the association, or pursuing claims as a representative of its members).  The latter is referred to as "representational" or "associational" standing.  Representational standing requires that (1) the organizations' members would have standing on their own to bring the action, (2) "the interests the organization seeks to protect are germane to its purpose", and (3) the claims asserted and the relief requested do not require individual participation by its members. Pa. Prison Soc'y, 508 F.3d at 163 n.10 (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)); Pa. Psych. Soc'y, 280 F.3d at 283 (same); N.J. Prot. & Advocacy, Inc. v. Davy, No. 05-1784, 2005 U.S. Dist. LEXIS 22749, at *5 (D.N.J. Sept. 30, 2005) (same). Accordingly, representational or associational standing recognizes that "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."  Pa. Psych. Soc'y, 280 F.3d at 283.

Defendants do not challenge that Plaintiffs' members would have standing to bring this action on their own or that protecting disabled children is an interest germane to each Plaintiff's purpose.  NJP&A is a federally funded agency that is statutorily authorized to pursue legal and administrative remedies and advocate on behalf of disabled persons in New Jersey.  (Compl., at ¶ 1.)  NJP&A entered into a contract with ELC pursuant to which ELC must provide protection and advocacy services to disabled children in Northern New Jersey, who are having difficulty obtaining a FAPE.  (Id. at ¶ 2.)  Moreover, SPAN is a federally funded organization that provides training and assistance to parents on issues such as special education, and the Arc is an advocacy organization for disabled individuals and their families.  (Id. at ¶¶ 3-4.)  Thus, the disabled individuals and their parents Plaintiffs seek to protect "are the direct and primary beneficiaries of [their] activities, 'including the prosecution of this kind of litigation.'"  Davy, 2005 U.S. Dist. LEXIS 22749, at *8.

Plaintiffs, in the complaint, set forth examples of individuals they purportedly represent who have suffered tangible injuries as a result of Defendants' failure to provide disabled children with a FAPE in the least restrictive environment.  See id. at *10 (noting that NJP&A listed examples of individuals who suffered tangible injuries in its complaint, and finding that

NJP&A sufficiently demonstrated that at least some of its members had standing in their own right for motion to dismiss purposes). (<u>See</u> Compl., at ¶¶ 15-19.)  Plaintiffs also make general statistical allegations concerning the segregation of disabled children in New Jersey, including that "9.0% of all segregated placements nationally are for such children in New Jersey." (<u>See</u> Compl., at ¶¶ 20-29.)  <u>See</u> <u>Davy</u>, 2005 U.S. Dist. LEXIS 22749, at *10 (noting that NJP&A set forth a general allegation regarding the percentage of individuals in New Jersey psychiatric hospitals on Conditional Extended Pending Placement status who remained institutionalized, and finding that NJP&A sufficiently demonstrated that at least some of its members had standing in their own right to bring an action asserting that the state used this status to confine individuals for excessive periods of time).  "At the pleading stage, general factual allegations of injury resulting from the [D]efendant[s'] conduct may suffice, for on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim."  <u>Davy</u>,  2005 U.S. Dist. LEXIS 22749, at *10 (quoting <u>Lujan</u>, 504 U.S. at 561) (internal quotations omitted).  Thus, the Court finds that Plaintiffs have satisfied the first two requirements of representational standing.

The Court also finds that Plaintiffs have satisfied the third requirement of representational standing because this

action does not, as Defendants contend, require the participation of their individual student members.  (See Defs. Br., at 27.) This third requirement is a prudential one and focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution".  United Food & Com. Workers Union Loc. 751 v. Brown Group, Inc., 517 U.S. 544, 554-57 (1996).  Further, individual member participation is not normally necessary when the organizational plaintiff seeks prospective or injunctive relief on behalf of its members.  Id. at 546; Hunt, 432 U.S. at 343 ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."); see Pa. Psych. Soc'y, 280 F.3d at 284 (stating that damages claims usually require significant individual participation, and thus, an association usually does not have standing to sue for damages on behalf of its members).  Also, some limited participation by the individual members of the organization does not bar associational or representational standing under this third element.  Pa. Psych. Soc'y, 280 F.3d at 283-86.

It appears that Plaintiffs' claims here would not require a fact-intensive inquiry into their individual members.  See id.

13

Plaintiffs assert that individual student participation would not
be necessary in this action because their claims do not focus on
individual injuries, but instead they allege that Defendants
systematically failed to comply with the inclusion mandate of the
IDEA and, in effect, have denied disabled children their right to
an inclusive education. See id. at 286 (noting that the
plaintiff maintained that its complaint asserted a systematic
policy violation making individual participation unnecessary, and
determining that so long as the plaintiff could establish its
claims with limited individual participation, it satisfied the
requirements of associational standing). (See Pls. Br., at 21-
22.) Thus, accepting Plaintiffs' allegations as true, the Court
concludes that Plaintiffs' claims will require limited or no
individual student participation. Therefore, Plaintiffs have
established the third requirement of representational standing.
"[W]e believe the [Plaintiffs'] suit should not be dismissed
before [they are] given the opportunity to establish the alleged
violations without significant individual participation". Pa.
Psych. Soc'y, 280 F.3d at 286.

### B.  Plaintiffs' IDEA Claim

The IDEA imposes a "child find" duty, which requires that
all disabled children residing in a particular state, who are in
need of special education and related services, must be
identified, located, and evaluated, and a method must be

developed to determine whether disabled children are currently
receiving needed special education and related services.  20
U.S.C. § 1412(a)(3)(A).   Moreover, the IDEA requires, <u>inter
alia</u>, that (1) a FAPE is available to all disabled children
between the ages of three and twenty-one that reside in a state
receiving assistance under the IDEA, (2) an individualized
education plan or program ("IEP") is developed, reviewed, and
revised for each disabled child, and (3) "[t]o the maximum extent
appropriate, children with disabilities . . . are educated with
children who are not disabled, and special classes, separate
schooling, or other removal of children with disabilities from
the regular educational environment occurs only when the nature
or severity of the disability is such that education in regular
classes with the use of supplementary aids and services cannot be
achieved satisfactorily."  20 U.S.C. § 1412(a)(1)(A), (4),
(5)(A).

     All state and local educational agencies that receive
assistance under the IDEA must maintain procedures to ensure that
disabled children and their parents "are guaranteed procedural
safeguards with respect to the provision of a free appropriate
public education by such agencies."  20 U.S.C. § 1415(a).  Such
procedural safeguards must include, <u>inter alia</u>, (1) written prior
notice to parents when a local educational agency refuses to
initiate the evaluation or educational placement of a disabled

child, and (2) the opportunity to present a complaint regarding the evaluation or educational placement of a disabled child.  20 U.S.C. §§ 1415(b)(3)(B), (b)(6)(A)-(B).  When a complaint pertaining to the evaluation or educational placement of a disabled child is received, the child's parents or the local educational agency have an opportunity for an impartial due process hearing conducted by either the state or local educational agency.  20 U.S.C. § 1415(f)(1)(A).  If the hearing is conducted by a local education agency, however, any aggrieved party may appeal the findings and decision to the state educational agency.  20 U.S.C. § 1415(g)(1).

A party aggrieved by the findings and decision made by a state or local educational agency in connection with an impartial due process hearing, may commence an action in any state or district court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2)(A); see 20 U.S.C. § 1415(f).  Such aggrieved party "shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation . . . in such time as the State law allows."  20 U.S.C. § 1415(i)(2)(B).  All administrative procedures provided under the IDEA must be exhausted before an aggrieved party may file a civil action "seeking relief that is also available" under the IDEA, even if such action asserts violations of the Americans with Disabilities Act, Rehabilitation

Act, or United States Constitution.  See 20 U.S.C. § 1415(l).

"Therefore, to the extent that any claim seeks relief that is

'available' under the IDEA, the IDEA's administrative remedies

must be exhausted before such action is brought." L.R. v.

Manheim Twp. Sch. Dist., No. 05-1283, 2008 U.S. Dist. LEXIS

23966, at *14 (E.D. Pa. March 26, 2008).

### 1.   Exhaustion of Administrative Remedies

Defendants assert that Plaintiffs' IDEA claim should be

dismissed because the students underlying such claim failed to

exhaust their administrative remedies as required by Section 1415

of the IDEA.  (Defs. Br., at 7.)  Defendants argue that an

administrative proceeding relating to each disabled student at

issue would (1) allow for "the full exploration of technical

educational issues" and the development of a complete factual

record, (2) "promote judicial efficiency by giving state and

local agencies the first opportunity to correct shortcomings in

their educational programs for disabled children", and (3) permit

state and local agencies to exercise their discretion and

educational expertise.  (Id.)  They further argue that a due

process hearing is well-suited to address "mainstreaming" issues,

and many cases in this district have relied upon an

administrative record in addressing such issues.  (Id. at 8-9.)

Defendants assert that the relief Plaintiffs seek could be

provided to the individual disabled students through a due

process hearing because, <u>inter alia</u>, the IDEA permits various forms of equitable relief.  (<u>Id.</u> at 12.)  Thus, Defendants contend that because Plaintiffs seek relief that is otherwise available under the IDEA, Plaintiffs were required to exhaust their administrative remedies before commencing this action.  (<u>Id.</u> at 13.)  Defendants also contend that "[b]y failing to exhaust their administrative remedies, plaintiffs are inappropriately seeking to have the . . . Court determine, in the first instance and without the assistance of a record from an administrative proceeding, whether plaintiffs' placements are in the least restrictive environment."  (<u>Id.</u> at 15.)  Last, Defendants argue that Plaintiffs' claims do not fall under any of the recognized exceptions to the IDEA's exhaustion requirement, including the exception for structural or systematic failure claims.  (<u>Id.</u> at 16-21 (emphasizing that Plaintiffs are simply challenging the students' individual placements).)

Plaintiffs, in response, emphasize that the individual students described in the complaint are not plaintiffs in this action, but were intended as illustrative examples.  (Pls. Br., at 8-9.)  Accordingly, Plaintiffs assert that it is irrelevant whether these non-parties exhausted their administrative remedies under the IDEA before this action was commenced.  (<u>Id.</u> at 9.)  Plaintiffs contend that the IDEA's administrative process for individuals does not apply to claims alleging systematic failures

18

and seeking system-wide relief, because exhaustion of the
administrative process in such instances would be futile and
inadequate.  (Id. at 9.)  Plaintiffs then argue that the
complaint sufficiently alleges that Defendants have implemented
policies and practices of general applicability that have caused
a systematic failure to comply with the IDEA.  (Id. at 10.)
Plaintiffs further argue that they "seek a sweeping overhaul to
force Defendants to meet their obligations under IDEA", and thus,
accepting all of their allegations as true for purposes of this
motion, they have sufficiently pleaded that exhaustion would be
futile here.  (Id. at 11.)  Similarly, Plaintiffs argue that they
could not obtain the relief they seek through the administrative
process because administrative law judges do not have the power
to grant system-wide relief.  (Id. at 14.)  Therefore, Plaintiffs
assert that they were not required to exhaust any administrative
remedies under the IDEA.  (Id. at 15 ("[F]orcing individuals
alleging systematic failures to pursue administrative remedies,
which are not binding outside of the provisions of the case or
settlement, would only serve to insulate the State's challenged
procedures from review.").)

     Although the policy of requiring exhaustion of the IDEA's
administrative remedies is a strong one, the courts have
recognized certain exceptions.  Komninos v. Upper Saddle River
Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  Specifically, the

IDEA's exhaustion requirement does not apply where (1) exhaustion would be futile or inadequate, (2) the issues presented involve purely legal questions, (3) the administrative agency cannot grant the relief sought, and (4) exhaustion would impose "severe or irreparable harm" on the litigant.  Id. (citing cases); Beth V. v. Carroll, 87 F.3d 80, 88-89 (3d Cir. 1996); Gaskin v. Pa., No. 94-4048, 1995 U.S. Dist. LEXIS 4272, at *14-*15 (E.D. Pa. March 31, 1995).  Plaintiffs also are excused from Section 1415's exhaustion requirement "where they allege systematic legal deficiencies and, correspondingly request system-wide relief that cannot be provided (or even addressed) through the administrative process."  Beth V., 87 F.3d at 89; see Grieco v. N.J. Dep't of Educ., No. 06-4077, 2007 U.S. Dist. LEXIS 46463, at *18 (D.N.J. Jun 27, 2007) (stating that exhaustion is excused when the plaintiff alleges a structural or systematic failure and requests system-wide reforms); Gaskin, 1995 U.S. Dist. LEXIS 4272, at *15 (explaining that exhaustion is not necessary where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to law[, or] it is improbable that adequate relief can be obtained by pursing administrative remedies" (alteration added)).  To the extent that this exception is implied from the futility and no-administrative-relief exceptions, it is among the traditional bases for waiving Section 1415.  Beth V., 87 F.3d at 89.

The Court finds that Plaintiffs were not required to exhaust any administrative remedies under the IDEA because their IDEA claim is not premised on the individual needs of particular students, but instead alleges that Defendants have systematically failed to comply with the statute's inclusion mandates. Plaintiffs do not seek individual remedies necessary to make themselves or their constituents whole.  In contrast, they seek "relief that requires restructuring, by judicial order, of the mechanism that the state has in place to meet the needs of students with special educational problems", because such students are currently not receiving educational instruction in the least restrictive environment.  Waters v. S. Bend Cmty. Sch. Corp., No. 98-3365, 1999 U.S. App. LEXIS 17743, at *11-*12 (7th Cir. 1999) (concluding that the plaintiff sought an individual remedy that could be granted through the administrative process even though the plaintiff claimed that the underlying causes of his failure to receive sufficient education were systematic). (See Pls. Br., at 10.)

The Court must accept as true, for purposes of this motion, Plaintiffs' allegation that Defendants have adopted policies and practices causing systematic and wide-spread violations of the rights of disabled children under the IDEA.  (See id.) Specifically, Plaintiffs assert that due to Defendants' failures, disabled children are "unnecessarily segregated and denied their

right to be educated with children who do not have disabilities, to the maximum extent appropriate" and are sometimes "placed in general education classrooms, but are denied aid, services, and accommodations needed to receive an appropriate education". (Compl., at ¶ 10.)  Such allegations implicate the integrity of the IDEA and, if established, could require this Court to order Defendants to restructure New Jersey's education system so that it no longer conflicts with the IDEA's mandate that disabled children must be educated with non-disabled children in regular classrooms to the maximum extent appropriate.  See Grieco, 2007 U.S. Dist. LEXIS 46463, at *19 (citing Doe v. Ariz. Dep't of Educ., 111 F.3d 678, 682 (9th Cir. 1997), which describes when a claim should be considered "systematic" for exhaustion purposes); 20 U.S.C. § 1412(a)(5)(A).  Accordingly, the Court concludes that although such allegations may be difficult to prove as the litigation progresses, Plaintiffs have sufficiently pleaded that New Jersey's special education system contains systematic, legal deficiencies that violate the IDEA.  See Beth V., 87 F.3d at 89; Grieco, 2007 U.S. Dist. LEXIS 46463, at *18; Gaskin, 1995 U.S. Dist. LEXIS 4272, at *15.[2]

_____

[2] The Court acknowledges that in Grieco a New Jersey district court granted a motion to dismiss the plaintiffs' class action complaint alleging that New Jersey systematically failed to include children with Down Syndrome in regular classrooms or in the least restrictive environment, because the plaintiffs had not exhausted their administrative remedies under the IDEA before

The relief Plaintiffs seek allegedly does not pertain to the IEPs of specific students and is not limited to the implementation of a particular aid or service.  Moreover, they do not assert their IDEA claims against one particular school district within New Jersey.  Instead, Plaintiffs contend that the entire special education system in New Jersey is deficient with respect to the placement of disabled children in the least restrictive environment, and thus, "the entire system that Defendants have in place . . . fails to comply with the obligation to ensure that students in New Jersey receive a FAPE".  (Pls. Br., at 13; see generally Compl.)  Accordingly, "[i]t is

---

commencing the action.  2007 U.S. Dist. LEXIS 46463, at *3, *30.  However, the Court finds that Grieco is distinguishable from the present case because, among other reasons, (1) Grieco was a putative class action that involved a "relatively smaller, more manageable, subset of disabled students", those with Down Syndrome, who sought only to "tweak" the educational system, (2) the Grieco court appeared to require the plaintiffs to present substantial evidence that exhaustion was futile, which is not the applicable standard on a motion to dismiss, and (3) the Grieco court determined that an individualized fact-intensive inquiry was necessary to determine whether each student's IEP provided appropriate accommodations in the least restrictive environment.  Id. at *20-*21, *23, *28-*29.  This case, in contrast, is not a class action, does not concern only a subset of disabled children, and allegedly would not require a fact-intensive inquiry into the IEPs of any individual students.  Further, Plaintiffs do not seek to simply tweak New Jersey's special education system, but request that this Court "overhaul" the system and force Defendants to meet their IDEA obligations.  (See Pls. Br., at 11.)  Thus, the Grieco reasoning does not persuade us that dismissal is required here.

clear that no hearing officer or administrative appeals board has the power to grant [Plaintiffs] the relief they seek". Gaskin, 1995 U.S. Dist. LEXIS 4272, at *18 (addressing the plaintiffs' request that the court require the Pennsylvania Department of Education to monitor a local school district's compliance with the IDEA); see J.S. v. Attica Cent. Sch., 386 F.3d 107, 113-14 (2d Cir. 2004) (citing Second Circuit cases where the court determined that exhaustion of administrative remedies would have been futile because the hearing officer did not have the power to correct the alleged violations).

A hearing officer or administrative law judge, although having the ability to determine whether a particular school district has appropriately applied the state's current policies and practices concerning placement of disabled students in special education or regular classrooms to a particular student, would not have the ability to direct the state to overhaul its policies and practices.  Further, if each student who is improperly segregated is forced to assert his or her claims through the administrative process, there is a high probability that there will be inconsistent results and the alleged "systematic" deficiency in the state's education system will not be remedied.  See J.S., 386 F.3d at 114.  In other words, the administrative process is powerless to address Plaintiffs' claims here, which concern New Jersey's policies and practices of

general applicability and allegedly require structural relief.
See Gaskin, 1995 U.S. Dist. LEXIS 4272, at *17-*18 (determining
that the IDEA's administrative process was "powerless" to address
the plaintiffs claims that the Pennsylvania Department of
Education was failing to monitor local school districts, which
were unnecessarily segregating disabled students from regular
classrooms).  Thus, because the complaint here does not challenge
the content of individual IEPs or individual placements, but
instead challenges the state's systematic failure to place
disabled children in the least restrictive environment, we find
that Plaintiffs were not required to exhaust any administrative
remedies under the IDEA before commencing this action.
Accordingly, the Court will deny the motion insofar as it seeks
dismissal of Plaintiffs' IDEA claim for failure to exhaust
administrative remedies.[3]

---

[3] Defendants, in their brief in support of the motion, argue
that Plaintiffs' IDEA claim should be dismissed because the IDEA
does not expressly or impliedly confer a private right of action
on them.  (Defs. Br., at 21-22 (Legal Argument, Point II).)
Plaintiffs concede that they do not have a private right of
action under the IDEA, but argue that they commenced this action
on behalf of disabled students and their parents, who do have a
private right of action under Section 1412(a)(6) of the IDEA.
(Pls. Br., at 16-17.)  In their reply brief, Defendants state,
"Plaintiffs have conceded that they have not brought this action
on their own behalf.  Accordingly, the Court need not consider
Point II or Point V of Defendants' Initial Brief."  (Defs. Reply
Br., at 1-2 n.2.)  Thus, because we have already determined that
Plaintiffs have representational standing, there is no dispute
that Plaintiffs have a private right of action under the IDEA
because they assert their IDEA claim on behalf of disabled
students and their parents, who have a private right of action
pursuant to Section 1412(a)(6).  See 20 U.S.C. § 1412(a)(6).

### 2.   Plaintiffs' Right to Generally Challenge the NJDOE's Compliance with the IDEA

The IDEA directs the federal Secretary of the Office of Special Education Programs ("Secretary") to, <u>inter alia</u>, monitor each state's implementation of the IDEA, enforce the IDEA, and require each state to enforce the IDEA and monitor its implementation by local educational agencies.  20 U.S.C. § 1416(a)(1).  The Secretary must monitor the states, and require the states to monitor their local educational agencies "using quantifiable indicators in each of the following priority areas, and using qualitative indicators as are needed to adequately measure performance in the following priority areas:" (1) provision of a FAPE in the least restrictive environment; (2) supervisory authority, including child find; and (3) disproportionate representation of racial and ethnic groups in special education services.  20 U.S.C. § 1416(a)(3).  Also, the Secretary must review and approve each state's performance plan, which describes the state's efforts to implement the IDEA and how such implementation will be improved.  20 U.S.C. §§ 1416(b)(1), (c).  Moreover, each state must use the targets set forth in its performance plan as well as the priority areas listed above to analyze each local educational agency's implementation of the IDEA.  20 U.S.C. § 1416(b)(2)(C)(i).

Each state must annually report to (1) the public on each local educational agency's performance, and (2) the Secretary on

26

its own performance under the performance plan.  20 U.S.C. §
1416(b)(2)(C)(ii).  Further, the Secretary must annually review
each state's performance plan and determine if the state meets
the IDEA's requirements or needs assistance, intervention, or
substantial intervention in implementing the IDEA.  20 U.S.C. §
1416(d).  If the Secretary determines that the state needs
assistance for two consecutive years, the Secretary must advise
the state about available sources of technical assistance, direct
that the state use its own funds to address the area in which it
needs assistance, or identify the state as a "high-risk grantee"
and impose special conditions on its receipt of IDEA funds.  20
U.S.C. § 1416(e)(1); see 20 U.S.C. § 1416(e)(2) (describing steps
the Secretary must take after determining that a state needs
intervention for three or more consecutive years); 20 U.S.C. §
1416(e)(3) (describing steps the Secretary must take after
determining that a state needs substantial intervention).  Thus,
the IDEA expressly authorizes the Secretary to oversee its
implementation in each participating state.

    Defendants assert that Plaintiffs "do not have a right of
action to challenge generally NJDOE's compliance with the
monitoring requirements set forth in [Section] 1416" of the IDEA.
(Defs. Br., at 30-31.)  Defendants argue that the standards set
forth in Section 1416 provide a "yardstick" for the Secretary to
measure a state's system-wide IDEA performance, but do not create

an individual entitlement to services.  (Id. at 31.)  Defendants further argue that these standards are designed to trigger penalty provisions or to reduce a state's IDEA grant, and thus, they do not confer any individual rights.  (Id. at 32.) Therefore, Defendants contend that the complaint should be dismissed to the extent Plaintiffs' claims challenge the NJDOE's general compliance with the IDEA's requirements.  (Id. at 33.)

Plaintiffs, in contrast, assert that the complaint does not simply challenge the NJDOE's general failure to monitor local educational agencies, but instead challenges "Defendants' system-wide failure to develop and maintain a process that ensures that students with disabilities receive a FAPE and are educated in the LRE."  (Pls. Br., at 25.)  Plaintiffs argue that Defendants' failure to monitor local educational agencies is only one example of such systematic failures.  (Id.)  Plaintiffs emphasize that (1) Defendants concede that disabled students and their parents have a private right of action under the IDEA, and (2) the state is charged with primary responsibility for ensuring IDEA compliance.  (Id. at 25-26.)  Thus, Plaintiffs contend that "[i]t is beyond dispute that a failure by the State, as the party with primary responsibility to ensure compliance with IDEA, is subject to challenge under the IDEA".  (Id. at 27.)

Although Section 1416 of the IDEA directs the Secretary to, inter alia, monitor New Jersey's implementation of the IDEA,

28

ensure that New Jersey monitors its local educational agencies, and approve and review New Jersey's IDEA performance plan, Section 1416 does not preclude private rights of action against the state for failure to comply with any IDEA provision, including the monitoring obligations imposed on each state in Section 1416.  See generally 20 U.S.C. § 1416.  As discussed in more detail above, Plaintiffs essentially challenge New Jersey's alleged systematic failure to place disabled children in the least restrictive environment.  Plaintiffs assert that New Jersey's performance plan "holds little promise for redressing this situation within the educational lifetime of today's students."  (Compl., at ¶ 27; see id. at ¶¶ 28-29 (discussing problems with state's performance plan).)

Plaintiffs have brought their claims on behalf of students and parents, who are entitled to the procedural safeguards set forth in Section 1415 of the IDEA.  See 20 U.S.C. § 1412(a)(6)(A).  Private rights of action are "one of the principal enforcement mechanisms of the rights guaranteed under the IDEA".  Beth V., 87 F.3d at 88 (holding that the plaintiffs, who alleged that the Pennsylvania Department of Education failed to investigate and timely resolve complaints of IDEA violations, had a private right of action under Section 1415).  In order to ensure that disabled children receive a FAPE, "Congress created a federal private right of action for both children with

disabilities and their parents.  Consequently, either the parents
of children with disabilities or the children themselves can
enforce the child's federal right to a FAPE." <u>Rancocas Valley
Reg'l High Sch. Bd. of Educ. v. M.R.</u>, 380 F.Supp.2d 490, 495
(D.N.J. 2005) (ultimately finding that a board of education did
not have a private right of action under the IDEA against New
Jersey).  The Court has already explained that Plaintiffs have
representational standing to assert their claim that Defendants
are systematically violating the IDEA on behalf of disabled
children and their parents.  We find that such claim may
generally challenge the NJDOE's compliance with the IDEA,
including any obligations imposed on the state in Section 1416.[4]

---

[4] Defendants argue that under <u>Blessing v. Freestone</u>, 520
U.S. 329 (1997), Plaintiffs "do not have a right of action to
challenge generally NJDOE's compliance with the monitoring
requirements set forth in [Section] 1416."  (Defs. Br., at 30-
31.)  In <u>Blessing</u>, five Arizona mothers, whose children were
eligible to receive child support services from the state
pursuant to Title IV-D of the Social Security Act, 42 U.S.C. §§
651-669(b), commenced an action against the director of the
state's child support agency under 42 U.S.C. § 1983, claiming
that "they had an enforceable right to have the State's program
achieve 'substantial compliance' with the requirements of Title
IV-D."  520 U.S. at 332-33.  The Supreme Court determined that
Title IV-D's requirement that states operate their child support
systems in "substantial compliance" with it was not intended to
create individual rights, but instead was intended to serve as a
way to measure the performance of a state's Title IV-D program.
<u>Id.</u> at 342.  The court ultimately remanded the case to the
district court "to construe the complaint in the first instance,
in order to determine exactly what rights, considered in their

## C.   Plaintiffs' Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability
> in the United States . . . shall, solely by reason of
> her or his disability, be excluded from the
> participation in, be denied the benefits of, or be
> subjected to discrimination under any program or
> activity receiving Federal financial assistance or
> under any program or activity conducted by any
> Executive agency[.]

29 U.S.C. § 794(a).  A student or former student can state a

claim under Section 504 by showing that (1) he or she is

"disabled" under the act, (2) he or she is "otherwise qualified"

to participate in school activities, (3) the defendant receives

federal financial assistance, and (4) he or she "was excluded

from participation in, denied the benefits of, or subject to

discrimination at, the school."  Andrew M. v. Del. County Office

---

most concrete, specific form, [the plaintiffs were] asserting"
had been violated.  Id. at 346.  Further, the Supreme Court
concluded that "although Title IV-D contains no private remedy -
either judicial or administrative - through which aggrieved
persons can seek redress" the Secretary's oversight powers under
this section were not so comprehensive as to close the door on
liability under 42 U.S.C. § 1983.  Id. at 348.  The Blessing
court's determination that the oversight provisions of Title IV-D
did not create any individual entitlement to services or any
private right of action does not affect our analysis here.  As
noted above, the IDEA does permit private rights of action by
disabled children and their parents, and thus, the Court need not
infer or create any individual entitlement to services from the
oversight provisions contained in Section 1416.  Thus, Blessing
does not alter this Court's conclusion that Plaintiffs have a
private right of action in their representational capacity to
assert their IDEA claim.

of Mental Health & Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007); Tereance D. v. Sch. Dist. of Phila., No. 07-4166, 2008 U.S. Dist. LEXIS 10929, at *13 (E.D. Pa. Feb. 13, 2008). Defendants initially argued that any claims Plaintiffs asserted under Section 504 of the Rehabilitation Act on behalf of themselves should be dismissed because the complaint "does not allege that [P]laintiffs were discriminated against due to their association with their clientele." (Defs. Br., at 33.)  However, Defendants later withdrew this argument, noting that "Plaintiffs have conceded that they have not brought this action on their own behalf." (Defs. Reply Br., at 1 n.2.)

The Court notes that the Rehabilitation Act does not require a plaintiff to exhaust any administrative remedies before commencing an action alleging that a federal or private entity receiving federal funding discriminated against the plaintiff on the basis of a disability in violation of Section 504. Burkhart v. Widener Univ., Inc., 70 Fed.Appx. 52 (3d Cir. 2003); see Freed v. Consol. Rail Corp., 201 F.3d 188, 194 (3d Cir. 2000) ("[W]e affirm our long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies".).  On the other hand, the IDEA states that before filing a civil action under, among other laws, the Rehabilitation Act, "seeking relief that is also available under" the IDEA, the administrative procedures under Sections 1415(f) and (g) must be

32

exhausted to the same extent as would be required had the action
been brought under the IDEA.  <u>See</u> 20 U.S.C. § 1415(l).  This
Court has already determined that Plaintiffs were not required to
exhaust any administrative procedures under the IDEA before
commencing this action, which alleges systematic failures caused
by Defendants' policies and practices of general applicability.
Thus, to the extent Defendants contend that Plaintiffs'
Rehabilitation Act claim should be dismissed because Plaintiffs
have failed to exhaust their administrative remedies under the
IDEA, the Court finds that such argument is without merit for the
reasons set forth in Discussion Section II.B.1. <u>supra</u>.  <u>See</u>
<u>Andrew M.</u>, 490 F.3d at 349 (noting that a plaintiff may use the
same conduct as the basis for both an IDEA claim and a
Rehabilitation Act claim).  Therefore, the Court will deny
Defendants' motion insofar as it seeks to dismiss Plaintiffs'
Rehabilitation Act claim for failure to exhaust administrative
remedies.[5]

### D.  Plaintiffs' Claims Against the Individuals Named in Their Official Capacity

Defendants assert that the Court should dismiss Plaintiffs'
claims insofar as asserted against the individuals named in their

---

[5] Defendants did not address the merits of the
Rehabilitation Act claim in either their brief in support of the
motion or their reply to Plaintiffs' brief in opposition to the
motion.  (<u>See generally</u> Defs. Br.; Defs. Reply Br.)

official capacities because "[t]he real party in interest in an
official-capacity suit is the government entity itself and not
the named official".  (Defs. Br., at 33.)  In contrast,
Plaintiffs assert that the individual Defendants were "properly
named in their official capacities since an order for prospective
injunctive relief can only be carried out by them in their
official capacities." (Pls. Br., at 29.)  The Court acknowledges
that in many circumstances it is appropriate for a plaintiff to
assert IDEA and Rehabilitation Act claims against individuals in
their "official capacities" as school administrators, school
district personnel, or school board members.  Nevertheless, the
Court finds that allowing Plaintiffs to maintain their claims
against the Board Members in their official capacities would be
duplicative and cumbersome.  See Grieco, 2007 U.S. Dist. LEXIS
46463, at *34 (noting that the district court raised the issue of
the duplicative and cumbersome nature of the plaintiffs' claims
against the defendant charter school and the defendant principal
in his official capacity).[6]  The Court notes that if Plaintiffs
succeed on their claims insofar as asserted against the NJDOE,
the Board, and Davy as Commissioner of the NJDOE, then the Board
Members will still be required to comply with and assist in

---

[6] The Court disagrees with Defendants that allowing
Plaintiffs' claims against Commissioner Davy and the Board itself
to continue would be duplicative.  Instead, we find that such
parties are necessary to this action.

34

implementing the terms of any injunction issued by this Court.
Thus, Plaintiffs can obtain the relief they seek without the
Board Members remaining in this action.  Accordingly, the Court
will dismiss the complaint insofar as asserted against the Board
Members.

## III. Defendants' Alternative Motion to Join the School Districts

Defendants contend that the complaint is deficient because
it fails to name New Jersey's school districts as defendants and
they are necessary parties under Rule 19(a).  (Defs. Br., at 35.)
Defendants further contend that much of the relief Plaintiffs
request would be more properly attained through the school
districts, which are responsible for providing services to
disabled students and ensuring they are educated in the least
restrictive environment.  (Id. at 36.)  Plaintiffs contend,
however, that the relief they request is against Defendants and
not the local school districts, which simply implement
Defendants' deficient policies and practices.  (Pls. Br., at 29-
30.)  Plaintiffs emphasize that it is the state's responsibility
to implement and ensure compliance with the IDEA.  (Id. at 30.)

Plaintiffs, at this stage in the litigation, have only
requested that this Court require New Jersey to comply with the
IDEA by issuing appropriate policies and practices, which can
then be followed by the school districts.  (See generally Compl.)
Accordingly, the Court concludes that complete relief can be

afforded to Plaintiffs without participation by New Jersey's school districts. See Fed.R.Civ.P. 19(a). However, the Court may revisit this issue after discovery has progressed. Therefore, the Court will deny Defendants' motion insofar as it requests that we join certain of the New Jersey school districts pursuant to Rule 19(a).

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion with respect to Plaintiffs' IDEA claim (count 1) and Rehabilitation Act claim (count 2) insofar as such claims are asserted against the Board Members, (2) deny the motion with respect to Plaintiffs' IDEA claim (count 1) and Rehabilitation Act claim (count 2) insofar as such claims are asserted against the NJDOE, the Board, and Commissioner Davy, (3) dismiss Plaintiffs' claims under NJLAD as withdrawn (count 3), and (4) deny the motion with respect to Plaintiffs' request to join necessary parties pursuant to Rule 19(a). The Court will issue an appropriate order and judgment.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated: June 30, 2008

36