UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DISABLILITY RIGHTS NEW JERSEY, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**NEW JERSEY DEPARTMENT OF EDUCATION, et al.,**<br><br>Defendants. | Civil Action No. 07-2978 (MLC)<br><br>**ORDER AND OPINION DENYING MOTION TO COMPEL CLASSROOM OBSERVATIONS** |

Presently before the Court is a motion filed by Plaintiffs, Disability Rights New Jersey, the Education Law Center, Statewide Parent Advocacy Network of New Jersey, and the ARC of New Jersey ("Plaintiffs"), for entry of an Order compelling compliance with that portion of the December 17, 2010 subpoenas (the "Subpoenas") served on the Berlin Borough, Brick Township, Camden, Clifton, Evesham Township, Galloway Township, Gloucester Township, Hopewell Valley Regional, Lindenwold Borough, Long Beach Island, Marlboro Township, Middlesex Borough, Midland Park Borough, Montclair, Newark, Rahway, Roselle Borough, South Brunswick Township, South River, and Teaneck Township school districts (the "Districts"), seeking classroom observations of certain students with disabilities. [Docket Entry No. 123]. The Midland Park Borough, Marlboro Township, Middlesex Borough, South Brunswick Township, Hopewell Valley Regional, Evesham Township, and Clifton Boards of Education (the "Objecting Districts") opposed the motion, as did the New Jersey Department of Education. [Docket Entry Nos. 126 to 133]. After considering the parties' submissions, the Court decides this motion without oral argument pursuant to Federal Rule

of Civil Procedure 78.¹  For the reasons set forth below, the Court denies Plaintiffs' motion to compel the classroom observations.

I.      BACKGROUND AND PROCEDURAL HISTORY

   A.      **The Litigation**

Plaintiffs, a collection of statewide advocacy agencies acting on behalf of children with disabilities, filed an amended complaint (the "Amended Complaint") against the New Jersey Department of Education, the New Jersey State Board of Education, and various individual members of those entities ("Defendants") on July 10, 2009.  [Docket Entry No. 51].  The Amended Complaint alleges that Defendants have systematically failed to comply with the Individuals with Disabilities Act, 20 U.S.C. § 1400 (the "IDEA").  Plaintiffs seek to enjoin Defendants from "violating the rights of children with disabilities to receive a free appropriate public education ["FAPE"] in the least restrictive environment ["LRE"]."  Amended Complaint at 2, 5, and 34-40 [Docket Entry No. 51].

In support of their affirmative case, Plaintiffs state that they plan to rely on an expert report to show the statewide level of inclusion of disabled students within general education classes. Plaintiffs' Brief in Support of their First Motion to Compel Compliance with the Subpoenas ("Plaintiffs' First Brief") at 1 [Docket Entry No. 91-1]; Plaintiffs' Brief in Support of Their Motion to Compel Classroom Observations at 4 ("Plaintiffs' Brief for Observations") [Docket Entry No. 123-1].  The proposed report is based on a study designed by Plaintiffs' retained experts,² which

---

¹As set forth below, the parties had the opportunity to address the issues raised in the pending motion at length during the hearing conducted on February 22, 2011.

² Plaintiffs identify Dr. James W. Conroy, Ph.D. and Dr. Lou Brown, Ph.D. as the experts retained to design and conduct the study.  The Court refers to Dr. Brown and Dr. Conroy as experts for purposes of this motion only, without determining whether they will ultimately be qualified as experts or whether the study they are conducting will be deemed reliable.

requires "a review of randomly selected students' records, classroom observations of those students and personnel interviews." Plaintiffs' First Brief at 1. [Docket Entry No. 91-1]. Plaintiffs' experts propose a random sampling to collect data for the report, with a sample size of twenty school districts and twenty students per district to participate in the study. Affidavit of Lou Brown, Ph.D. ("Brown Aff.") at ¶ 3, submitted in support of Plaintiffs' Brief for Observations [Docket Entry No. 123-2]. The experts assert that the random sampling will show aggregate results, thereby providing information as to statewide compliance rather than compliance within individual districts. Plaintiffs' Brief for Observations at 2; Brown Aff. ¶ 2.

On or about December 17, 2010, Plaintiffs served the Subpoenas on twenty New Jersey school districts. Plaintiffs' First Brief at 1 [Docket Entry No. 91-1]. The Districts were selected to participate "with probability proportional to size," and twenty students from each District were then selected at random. Affidavit of James W. Conroy, Ph.D. ("Conroy Aff.") at ¶ 2, submitted in support of Plaintiffs' Brief for Observations [Docket Entry No. 123-3]. The Subpoenas requested the production of certain documents from the selected students' education files,[3] classroom observations of the selected students, and interviews with the students' teachers, parents, and staff members at the school. Id. A letter sent with the Subpoenas stated that each interview would last approximately one hour, while each observation would last approximately three hours. See Clifton's Brief in Support of its Motion to Quash, Exhibit A and B. [Docket Entry No. 83].

---

[3]The documents sought included the three most recent IEPs, the most recent special education evaluation or re-evaluation, the most recent independent evaluations, the transportation costs and pick up and drop off times for any selected student not being transported with the general education students, and, for any selected student that had already graduated out of the district, any records related to post-secondary outcomes in the preceding three years.

### B. The Discovery Motions and the February 22 Hearing

The Clifton, Marlboro, Midland Park, Middlesex Borough, South Brunswick, and Hopewell Valley School Districts (the "Moving Districts") filed motions to quash the Subpoenas. [Docket Entry Nos. 83-88]. Plaintiffs then filed a motion to compel the Berlin, Brick, Evesham, Long Beach Island, Newark, Rahway, Roselle, and South River Districts to comply with the Subpoenas,[4] and cross-moved to compel compliance from the Moving Districts. [Docket Entry No. 91]. All of the motions were filed in or around January 2011. [Docket Entry Nos. 83-88; 91]. After the motions were fully briefed, the Court heard oral argument on February 22, 2011. [Docket Entry No. 102].

At oral argument, the Court denied in part and granted in part Plaintiffs' motion and cross-motions to compel compliance with the Subpoenas. See Transcript from February 22, 2011 Oral Argument ("Transcript"); see also April 18, 2011 Order [Docket Entry No. 136]. The Court granted Plaintiffs' document request and further permitted Plaintiffs to request the interviews, but denied their request to conduct classroom observations. Id.

During the hearing, the Court made detailed inquiry with regard to the nature of the observations being proposed by Plaintiffs. The Moving Districts raised a number of concerns, including, *inter alia*, the lack of apparent probative value of the information to be obtained during the observations, the fact that the Districts are not defendants in this case but nonetheless appear to be targeted by the requested observations, the privacy interests of other students in the classrooms, the anticipated classroom disruption caused by the observations, and the significant burden on the Districts if the observations were allowed. See Transcripts at 27, 29-40.

---

[4]Only the Brick and Evesham Districts formally opposed the motion. The other districts notified Plaintiffs that they would comply but had not yet done so at the time of the filing of the motions. Plaintiffs' First Brief at 2. [Docket Entry No. 91-1]

4

One of the particular concerns raised during the hearing was that the credentials of the experts had not been provided, nor had there been any opportunity to conduct criminal background checks or take other safety precautions. Transcript at 27. Accordingly, the Moving Districts contended that the observations posed a serious safety issue, and that they would need to have a staff member from each of the schools accompany the observers. Transcript at 30-31, 33. They argued that this would impose a significant expense on each District.

In attempting to respond to these concerns, Plaintiffs stated for the first time at oral argument that the experts themselves would not actually conduct the on-site observations. Transcript at 31. Rather, the people entering the schools to observe the selected students would most likely be volunteer graduate students, acting under the supervision of the experts. Transcript at 28. Because those individuals would not be interacting with the children, Plaintiffs argued that criminal background checks or other safety precautions, such as escorts, would not be necessary. Transcript at 29.

The Court specifically expressed concern with regard to the issues raised by the Districts, and asked Plaintiffs to address those concerns at the hearing:

> THE COURT: This is the first I'm hearing about the use of graduate students to go into the school to conduct these observations. We have – we're not even at the interview yet, and that I view as very different from the observations. So, I want you to stick to the observations right now and tell me what is the benefit that is to be obtained by having these graduate students conduct these observations? . . . .
>
> Number two, what safety assurances are being given if – if there's not some kind of background check or prior identification?
>
> And number three, what about the burden on these districts from having someone accompany them?

5

Transcript at 35-36. The Court also made clear that it needed a better understanding of "what these field studies and these observations are intended to elicit in furtherance of what is at issue in this lawsuit." Transcript at 45.

Counsel for Plaintiffs replied that the observers would be identified in advance, that the graduate students would be supervised by their professors, and that there would be no need for anyone to accompany them. Transcript at 36. In Plaintiffs' view, if a District required accompaniment, that was a "self-imposed" burden. Transcript at 36, 39.

Plaintiffs also informed the Court that although the experts would not be conducting the observations themselves, they would train the observers, and that by using graduate students, they would be able to reduce the number of observation days per district from 20 days to two weeks or less. Transcript at 37. By training the observers, Plaintiffs asserted that they would ensure consistency in the results. Transcript at 38. They also asserted that the privacy issue was inapplicable, because "the FERPA confidentiality does not apply to observations." Transcript at 39.

With regard to the goal of the observations, Plaintiffs stated at the February 22 hearing that the observations were intended to "find out what the state of inclusion is in New Jersey and what the barriers are to inclusion in New Jersey." Transcript at 46. When prompted with regard to how the observations would further that goal, counsel pointed to instances in which a given student might be observed not to be receiving the type of instruction called for in the IEP. Transcript at 47. Counsel for Plaintiffs stated:

> For example . . . [s]uppose the observers interview the teacher and the teacher said, "This student cannot be in a regular class because his behavior is too disruptive . . . . And if the observer saw the student in a Special [Education] class was getting a lot of positive attention and the observation showed . . . that the student was properly placed

6

> outside the regular class. If on the other hand, the interview stated that the student needs one-on-one instruction for the – for whatever the– the subject might be and he can't get that in the regular class. And then the observers went into the regular class and they saw that the student was actually not getting a lot of one-on-one instruction in the regular class. He was with the group . . . . [W]e hope that out of this process, since it is a random sample, we will have a true picture of reality of why students are not educated in the regular class for more of the day.

Transcript at 46-47, l. 20 to 1.4.

Ultimately, the Court denied the application to conduct observations, noting that it was still unclear why the records and interviews were not sufficient to accomplish the goals outlined by Plaintiffs, and how the information to be gleaned from the observations related to the claims of the lawsuit, especially without the benefit of hearing from Plaintiffs' experts. Without that information, the Court was unable to find that Plaintiffs' need for the observations outweighed the burden that would be imposed on the Districts if the observations were allowed. Transcript at 50-52.

Nonetheless, the Court gave Plaintiffs the opportunity to make a new application, based upon any additional argument they wished to submit on the issues raised, as well as information from their experts. Transcript at 51-52. Plaintiffs were specifically instructed to provide a letter memorandum and an affidavit of the expert "explaining exactly what the process is that they're proposing and how it ties in to the allegations in this Complaint." Transcript at 52.

### C. The Present Motion

Plaintiffs filed this motion to compel compliance with the Subpoenas insofar as they seek classroom observations. [Docket Entry No. 123]. As part of their motion papers, Plaintiffs rely on the affidavits of two individuals identified as experts. Conroy Aff.; Brown Aff. [Docket Entry Nos. 123-2 and 123-3]. The Conroy Affidavit relates to the nature of the random sampling and its

reliability. The Brown Affidavit addresses the information to be gathered through the observations, and how it will be used.

According to the Brown Affidavit, the proposed observations are "comparable in nature" to the observations routinely conducted in the Districts. Brown Aff. ¶7. Plaintiffs represent that for the observations at issue, the education expert will train all field study personnel to conduct the observations, which are expected to last 2 - 3 hours each, in the "most unobtrusive manner in the back of the room and without interacting with any students or staff." Brown Aff. ¶4(c) and (e). Additionally, each observer will be trained to follow a uniform protocol for observing the students in their classrooms, and will utilize a specially designed "form for recording descriptions of the observations." Brown Aff. ¶4(c). The observers will be carefully selected "from among teachers with masters and doctoral degrees, academics in the field of education and graduate students." Brown Aff. ¶4(f). Any graduate student selected will have completed at least one student teaching practicum, and will be supervised not only by Plaintiffs' experts, but also by their professors. Id.

The experts anticipate that the observations will show (1) whether or not students are receiving supplemental aids, services, and accommodations as set forth in their IEPs; (2) whether they are receiving "positive behavioral interventions;" (3) whether "specially designed instruction" is being provided; (4) whether students with disabilities are unnecessarily being excluded from general education classrooms because of the "service delivery system;" and (5) whether individualized instruction is available in the classroom to students with disabilities. Brown Aff. ¶8. They state that the purpose of the observations is to confirm information received from the other two parts of the study. Brown Aff. ¶6.

The Objecting Districts contend that the observations are unduly burdensome for a multitude of reasons.[5] [Docket Entry Nos. 126 to 133].[6] First, the Objecting Districts estimate that there will be 60 hours of observation time required within each district, and that those hours could span multiple weeks, causing prolonged intrusion in the classroom. Middlesex Brief in Opposition to the Motion for Observations ("Middlesex Brief") at 3. [Docket Entry No. 128]. In the same vein, they assert that Plaintiffs have not disclosed how many observers will be sent to each district or school, and that the likelihood of disruption increases as the number of observers allowed to enter the school increases. Id. They also contend that an administrator, child study team member, or other school official must accompany each observer, further increasing the burden on the Districts and disrupting the work those individuals would otherwise be doing. Clifton Brief in Opposition to the Motion for Observations ("Clifton Brief") at 7 [Docket Entry No. 133]; Midland Park Brief in Opposition to the Motion for Observations ("Midland Park Brief") at 8. [Docket Entry No. 126]. The Objecting Districts argue that this would vastly increase the cost borne by the Districts. Clifton Brief at 7.

Alternatively, the Objecting Districts allege that unsupervised observations present

---

[5]The Objecting Districts also argue that Plaintiffs did not comply with Rules 7.1(d), 37(a)(1), and 37(a)(B)(vi). Clifton Brief at 1-3 [Docket Entry No. 133]. Although the motion to compel the observations was denied at the February 22 hearing, however, the Court specifically gave Plaintiffs leave to file the present application if they could not get the information they sought from the other means available to them, and Plaintiffs did so in accordance with the Court's instructions. Accordingly, the Court will not deny Plaintiffs' motion based on the procedural objections raised. See April 18, 2011 Order [Docket Entry No. 136]. Several Objecting Parties also raise an issue with regard to proper notice to the parents. This Court dealt with the notice issue in its May 17, 2011 Order, and therefore does not address it again in this Order.

[6]Each of the Objecting Districts filed a brief in opposition to Plaintiffs' motion. [Docket Entry Nos. 126 to 133]. Because a significant number of the arguments were the same or overlapped, the Court addresses the arguments as a whole, rather than separately for each party.

significant safety concerns. Midland Park Brief at 8. Those concerns are not alleviated simply because the observers may be teachers with advanced degrees or graduate students that have had at least one practicum. Id. They are strangers nonetheless, and as such, pose a potential threat to the students if they are allowed unsupervised access to the schools. The Objecting Districts also refute Plaintiffs' claims that the observations are similar to those that traditionally take place in schools because in traditional evaluations, schools are given the evaluator's credentials in advance, and evaluators are allowed into the school at the request of a parent or other authority. South Brunswick Brief in Opposition to the Motion for Observations ("South Brunswick Brief") at 2. [Docket Entry No. 129].

The Objecting Districts also argue that Plaintiffs have failed to support their claim that they need the information that would be gleaned from the observations. First, the Districts argue that because of their significant concerns about the reliability of the observations, Plaintiffs need is diminished. Middlesex Brief at 2.[7] [Docket Entry No. 128]. Among the concerns they raise is the fact that Plaintiffs have not given the Court or the Districts a complete list of what information will be sought or recorded during the observation, leaving the methodology and means to be employed in performing the observations unknown. Middlesex Brief at 2; Clifton Brief at 6. They also question how a 2 - 3 hour observation can measure whether a child is receiving every service in his or her IEP, especially in light of the varied disabilities of the children involved and the different services provided. Middlesex Brief at 2. According to the Districts, Plaintiffs have failed to put forth information regarding the adequacy of the sample size or how the sample will produce an

---

[7]Initially, the Districts objected that Plaintiffs had failed to submit credentials for the experts. Clifton Brief at 6. In response to that objection, however, Plaintiffs provided the Curricula Vitae of the experts with their reply, so this issue is moot.

accurate aggregate finding.  Middlesex Brief at 2; Clifton Brief at 6.

The Objecting Districts next argue that Plaintiffs' have failed to articulate a sufficient nexus between implementation of the IEPs and the Amended Complaint, which alleges that the State has failed to supervise and perform its duties pursuant to the IDEA.  Evesham Brief at 9 [Docket Entry No. 132].  They point out that by Plaintiffs' own admission, the observations are designed to show whether the Districts are implementing the selected students' IEPs.  This raises an issue as to whether the Districts are providing the students with a free and appropriate public education, rather than whether the students are receiving that education in the least restrictive environment.  Since the Amended Complaint challenges whether these students are being included to the greatest extent possible, the sole issue is the LRE.  FAPE is not implicated.  Accordingly, the Objecting Districts argue that the observations would have no bearing on the issues in the Amended Complaint.  Id. They conclude that "[b]y demanding observations, Plaintiffs seek to ascribe individual FAPE violations and IEP disputes to Defendants' failure to regulate the districts' compliance with the LRE mandate in an apparent attempt to circumvent administrative and other remedies prescribed by Federal and State Laws." Id. at 10.  In support of their position, the Objecting Districts cite the New Jersey statutes setting forth the proper procedures to challenge a student's IEP or placement, and the fact that under New Jersey law, the implementation of a student's special education program is the obligation of the individual school district, not of Defendants.  Evesham Brief at 10, citing N.J.A.C. 6A:14-2.6 and 6A:14-2.7; Clifton Brief at 5 [Docket Entry No. 5].  They assert that "[w]hile ascertaining the specific placement and services of special education students in New Jersey may tend to indicate how well the State's plan is working, visual confirmation of the reports of the individual school districts is not required in order to do so." Clifton at 5.  The Objecting Districts

11

claim that Plaintiffs, in requesting the observations, assume that the documents and interviews are somehow inaccurate, implying that the Districts are purposefully denying students services. Midland Park Brief at 7. [Docket Entry No. 126].

As a more general matter, the Objecting Districts point out that Plaintiffs have failed to address the concerns expressed by the Court at the February 22 hearing. They contend that Plaintiffs' renewed application only reiterates the arguments Plaintiffs made at the hearing, without adding any information to assist the Court in weighing Plaintiffs' need for the observations. The Objecting Districts also note that Plaintiffs had not received the student files yet and therefore could not represent to the Court that those documents would not provide enough information for them to complete their study. Evesham Brief at 4 [Docket Entry No. 132]; Midland Brief at 2.

Plaintiffs, on the other hand, argue that "the observations are needed, relevant, limited in scope, of limited duration, succinctly delineated and are neither unreasonable nor oppressive." Plaintiffs' Brief for Observations at 2. Plaintiffs allege that their need for the observations is linked to the overall goal of the litigation, which is to redress state-wide failures affecting thousands of children. Id. They also state that the observations are necessary to confirm information gathered from other portions of the study, and to show the extent to which students are receiving the supplementary aids and services listed in New Jersey's special education regulations. Plaintiffs' Brief for Observations at 3-4. This information cannot be gleaned from the documents alone because the IEPs may not offer specific enough information about a service that a student should be receiving. Plaintiffs' Brief for Observations at 5.

In support of their argument, Plaintiffs provide a hypothetical to illustrate that a student's IEP may state that he or she is provided with voice-to-text software, and that only an observation will

determine if the software is available in the special education classroom, but not in the general education classroom. Id. Plaintiffs expert states that the observations will be able to "document whether the student is receiving specially designed instruction that is required by the IEP and are the only means of ascertaining whether students with disabilities are participating in academic programs to the same extent as, and along side, their non-disabled peers." Conroy Aff. ¶7. In addition, Plaintiffs assert that information of this type can be aggregated to illustrate statewide statistics, thus showing whether the State is fulfilling its mandate under federal law. Id. Plaintiffs assert that the triangulation of the information gathered from the observations, records, and interviews will provide them with statistically valid evidence showing compliance with the IDEA. Id.

Plaintiffs next allege that the Objecting Districts do not meet their heavy burden of proving that the Subpoenas are unduly burdensome. Plaintiffs' Brief for Observations at 2. Plaintiffs dispute the contention that the observers will require assistance from or accompaniment by any district personnel, and argue that state administrative law prohibits the Districts from requesting that any observer submit to a background check. Plaintiffs' Reply Brief in Support of Their Motion to Compel Classroom Observations ("Plaintiffs' Reply Brief") at 8 [Docket Entry No. 134]. Their expert also asserts that he regularly utilizes graduate students or other teachers in conducting observations such as the one proposed by Plaintiffs. Brown Aff. ¶4f.

Finally, Plaintiffs argue that the observations are permissible under the Federal Rules, and courts liberally construe the rules to allow for any discovery that may bear on any issue in the case. Plaintiffs' Brief for Observations at 5.

**II.    DISCUSSION**

Federal Rule of Civil Procedure 26 delineates the scope and limitations of discovery in

federal court. Fed. R. Civ. P. 26(b)(1). Under Rule 26, parties may obtain discovery "regarding any non-privileged matter that is relevant to a party's claim or defense." Id. Discoverable information need not be admissible at trial as long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

The federal rules also expressly allow a party to serve a request on any other party to "[enter] onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it," as long as the request falls within the scope set forth in Rule 26. Fed. R. Civ. P. 34(a)(2). Courts have broadly interpreted the meaning of the term "inspection" to include various types of observations, including classroom observations. Gaskin v. Commonwealth of Pennsylvania, 1997 WL 734031 at *1 (E.D. Pa. Nov. 4, 1997)(permitting classroom observations on a finding that "inspection" means more than looking); Santamaria v. Dallas Indep. Sch. Dist., 2006 WL 1343604 at *3 (N.D. Texas May 16, 2006)(ordering classroom observations although there may be "some disruption and inconvenience").

Despite the broad nature of Rules 26 and 34, discovery does have limitations. Rule 26 requires the court to limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or when] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii). Under Rule 34, the request to enter and inspect must describe with reasonable particularity each item that is to be inspected and must specify a reasonable

14

time, place, and manner for the inspection to occur. Fed. R. Civ. P. 34(b)(1)(A) & (B). Discovery requested through a subpoena must comply with the requirements of Rules 26 and 34, and a party "or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).

An undue burden exists when the subpoena is "unreasonable or oppressive." Schmulovich v. 1161 Rt. 9 LLC, 2007 WL 2362598 at *4 (D.N.J. 2007). There is no "strict definition of unreasonable or oppressive" and courts have used several factors in determining the reasonableness of a subpoena, including: (1) the party's need for production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party. Id. The party claiming undue burden must make that showing. Nye v. Ingersoll Rand Company, 2011 WL 253957 at *6 (D.N.J. January 25, 2011).

The Court first addresses Plaintiffs' argument that the Objecting Districts have not met their heavy burden of showing the Subpoenas are unreasonable or burdensome. While the law is clear that it is the Objecting Districts' responsibility to show undue burden in order to quash the Subpoenas, the Court was unpersuaded by Plaintiffs' arguments during the February 22, 2011 hearing and granted the motion to quash that portion of the Subpoenas, while giving Plaintiffs leave to renew their application if they were able to provide further support. See section I.B, supra; April 18, 2011 Order [Docket Entry No. 136]; Transcripts 27-52. At that time, the Court could not accurately assess the propriety of allowing the observations to go forward because Plaintiffs had failed to provide detailed information sufficient to show how those observations would be conducted. Accordingly, the Court denied the motion to compel the observations, and granted the

15

motions to quash the Subpoenas in regard to the observations. Transcripts at 52. Plaintiffs were specifically instructed to provide the Court with information about the observation process, what the observations were expected to accomplish, why they were necessary, how they related to the allegations in the Amended Complaint, and why the information they were seeking could not be gleaned from another source. Transcript at 51-52. At this juncture, the burden is on Plaintiffs to show why the observations should be allowed, given the Court's prior ruling on the motions. After reviewing Plaintiffs' submissions, the Court agrees with the Objecting Districts that Plaintiffs still have not shown that the observations should be allowed to go forward.

      Plaintiffs have not clearly articulated their need for the observations. First, they fail to explain how information concerning whether students are receiving services listed in their IEPs, in the aggregate or otherwise, is related to Defendants' responsibilities under the IDEA, and thus the allegations in the Amended Complaint. Instead, Plaintiffs make conclusory statements as to the importance of the overall goals of the litigation and the importance of the outcome to children with disabilities in this state. Plaintiffs do not, however, articulate what the observations will show as to *Defendants*' failure to comply with the IDEA, as opposed to any failures of the local school districts. While Plaintiffs contend that the observations will show that certain students may or may not be receiving some or all of the services identified in their IEPs, the Objecting Districts validly raise the argument that providing the services listed in an IEP is the responsibility of the local school district, not of Defendants. Indeed, as set forth in the Objecting Districts' briefing, New Jersey delegates such responsibility to the individual school districts and relies on reporting mechanisms to address any such failures in implementing the IEP. See, e.g., Geis v. Board of Education of Parsippany-Troy Hills, Morris County, 774 F.2d 575 (3rd Cir. 1985)(discussing New Jersey's requirement under the

16

IDEA to institute a policy or mandate an act to supervise, and that the parent or local school district is responsible for reporting failures in implementing the services required in an IEP). Plaintiffs offer no counter-argument to the Objecting Districts' arguments, and do not provide the Court with any explanation as to how a failure by a local school district would support the allegation that Defendants have failed to comply with the IDEA.  See A.A., et al., v. Phillips, et al., 386 F.3d 455 (2d Cir. 2004)(plaintiffs could not point to any specific provision within the IDEA that gives the state specific guidance on how to ensure local compliance, in that the IDEA gives the state only general supervisory responsibilities); Chavez v. New Mexico Public Education Department, 621 F.3d 1275 (10th Cir. 2010)(the state is not responsible to directly provide a student with FAPE, even if the local education authority is not providing one, without the proper administrative proceedings).  The lack of this nexus is a significant component in the Court's determination that Plaintiffs have not made a sufficient showing of need.

Second, the apparent subjectivity of the proposed process weighs against Plaintiffs' need for the observations.  While Plaintiffs are correct that this Court cannot make an ultimate reliability finding regarding the study, the Court would nonetheless be remiss if it ignored questions of relevance and subjectivity in determining Plaintiffs' need for the observations against the significant burden to the non-party Districts.[8]   Plaintiffs offer little information with regard to how the observations will be conducted or how they would limit the subjective nature of the process.

---

[8]The Court distinguishes the request for observations from the portions of the Subpoenas previously permitted to proceed.  In granting Plaintiffs' request for documents and allowing the interviews to go forward, the Court noted that there is relatively no burden on the Districts, and there was a showing of relevance, in that those documents could have some bearing on Defendants' alleged failure to comply with the IDEA. The burden imposed by the observations is vastly different in nature, being both more intrusive and more expensive.

Plaintiffs merely state that the observers will utilize a "form for recording descriptions of the observations." Brown Aff. ¶4(c). They give no indication of whether they will use a checklist of objective benchmarks, as opposed to a narrative prepared by each individual observer.

Additionally, this Court is concerned that to the extent the observations will only last 2 - 3 hours per student, it would be impossible to know with any certainty whether a failure to observe a given service means that the service is not being provided or that it simply was not being provided during that short window of time. See, e.g., Ligas v. Maram, 2007 WL 2316490 at *4-*5 (N.D.Ill. August 10, 2007)(denying observations of short duration because the court was not convinced that the observations would lead to meaningful evidence in support of the complaint).

The Court is also not persuaded by Plaintiffs' arguments regarding safety and disruption. The Court agrees with the Objecting Districts that simply because individuals work in the field of education does not mean they pose no risk to children in the classroom. The Districts are charged with the safety of their students while they are in school. Taking steps to ensure that safety is not a "self-imposed" obligation but a real one. Unlike traditional observations where credentials are known in advance, in this case the Districts are being told little or nothing about the observers that would be entering their schools. The presumption that the classroom teachers should be responsible for making sure that no risk is posed by the observers imposes yet another burden on the Districts, further supporting their objections.

Plaintiffs had a second opportunity to persuade the Court that the observations should go forward. The Court was very clear in granting leave to make a second application, however, that it had very real concerns with regard to the nature, conduct and relevance of the observations, and it

was up to Plaintiffs to address those concerns.  The Court finds that Plaintiffs have failed to do so.  The Court therefore denies their motion to compel classroom observations from the Districts.

For the reasons stated above, and for good cause shown,

**IT IS** on this **26th** day of **September, 2011,**

**ORDERED** that Plaintiffs' motion to compel compliance with the December 17, 2010 Subpoenas in order to conduct classroom observations [Docket Entry No. 123]  is **DENIED.**

 

 

**LOIS H. GOODMAN**
**United States Magistrate Judge**